[No. 47865-6-I. Division One. May 6, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. JEANNE PEARL
BALDWIN, *Appellant*.

632

634

■■■■■■

■■■■■■

■■■■■■

*Shannon B. Marsh* (of *Washington Appellate Project*), for appellant.

*James H. Krider, Prosecuting Attorney,* and *Seth Aaron Fine* and *Charles F. Blackman, Deputies,* for respondent.

■■■■■■

■■■■■■

BAKER, J. — Jeanne Baldwin was found guilty of three counts of identity theft and two counts of forgery. The trial court imposed an exceptional sentence premised on the crimes being "major economic offenses" because Baldwin had utilized a complicated scheme to purchase a home and several automobiles with the stolen identities. Baldwin's central argument is that her convictions for both identity theft and forgery violate double jeopardy principles. We disagree, and affirm because the offenses involved different victims.

I

Baldwin, representing herself as "Kaytie Allshouse," purchased a house, forging Allshouse's name to two deeds of trust. The first deed of trust secured the interest of an institutional lender, Global Holdings; the second, subordinate, deed was in favor of the sellers, Diane Masin and

David Swadberg. The deeds secured payment of $45,500, and $6,500, respectively.

Two months later, Baldwin rented a mailbox at the Mail Room, a mailbox-rental outlet in Everett. Baldwin presented herself as "Monica Schultz" and produced a Washington driver's license bearing that name. She signed Schultz's name to the mailbox application and began receiving mail in some 15 other names.

Baldwin later rented a mailbox from Jerald Landwehr at Cascade Storage, another mailbox-rental outlet. Baldwin again rented under a false name, this time as "Carol Hopey." She produced two pieces of identification, including a Washington driver's license. Baldwin told Landwehr the mailbox was for "Econo Accounting," and a number of her "employees" would be receiving mail. Letters and packages in a number of names were received at that mailbox.

Meanwhile, a United States postal inspector acting on a complaint placed a 30-day mail cover on the Cascade Storage box address. Under a mail cover, all mail to a specific address is recorded by postmark, addressee, sender, and class of mail. The mail cover revealed mail in numerous names being sent to the rented box. The inspector then contacted a detective who investigates financial crimes for the Snohomish County Sheriff's Office.

The detective traced the telephone number listed on the Cascade Storage rental paperwork to Baldwin. His suspicions that Baldwin had stolen Hopey's identity were confirmed when Cascade Storage manager Jerald Landwehr picked Baldwin's picture out of a photomontage.

As the detective and inspector proceeded to attempt to locate and call individuals whose names had been gleaned from the Cascade Storage mail cover, they learned the Everett Police Department had been independently investigating allegations of similar multiple name use at the Mail Room in Everett. The detective showed the same photomontage to the Mail Room's manager who immediately picked out Baldwin's picture.

Landwehr had noted the license plate on a car Baldwin and a male companion frequently used when they picked up their mail. The detective "ran" the plate and discovered the car was registered to "Kaytie Allshouse" at a Granite Falls post office box which was registered to "Kaytie Allshouse" and Kevin Hendrickson[1] at 30911 Mountain Loop Highway, Granite Falls. That was the address of the property encumbered by the two deeds of trust Baldwin had executed with the forged name of "Kaytie Allshouse."

A search of the Granite Falls property yielded a wallet containing a Washington driver's license in the name of "Kaytie Allshouse" bearing Baldwin's picture, and two VISA cards, also in the name of "Kaytie Allshouse." The search also uncovered vehicle titles and registrations for four different vehicles in the names of "Kaytie Allshouse" and "Carol Hopey," and auto insurance policies or cards in the names of "Kaytie Allshouse," "Carol Hopey," and "Monica Schultz." Officers also found a social security card for "Kaytie Allshouse" as well as homeowner's insurance correspondence and a utility bill, all addressed to "Kaytie Allshouse" at the Granite Falls address.

Baldwin was charged with six counts: (1) theft of Kaytie Allshouse's identity; (2) theft of Monica Schultz's identity; (3) theft of Carol Hopey's identity; (4) forgery of a deed in Allshouse's name; (5) forgery of Allshouse's name on an adjustable rider; and (6) forgery of a junior deed in Allshouse's name.

At trial, Kaytie Allshouse testified that she did not sign her name to the two trust deeds on the Granite Falls property. When asked how she felt about finding that someone had used her name to buy a house, she stated, "I don't want this in my name. It's not mine. I do not own it . . . . I just can't afford it. I don't want it." Likewise, Hopey testified she did not know Baldwin, had never lived in

---

[1] Kevin Hendrickson was the codefendant in this case. He ultimately pleaded guilty to certain counts after Baldwin's trial and, like Baldwin, received an exceptional sentence.

Snohomish County, had never rented a private mailbox, and had given no one permission to use her name.

The jury found Baldwin guilty on all counts except the alleged forgery of the adjustable rate rider. At sentencing, the prosecutor recommended an exceptional sentence of 36 months. Baldwin asked for a midrange sentence and that counts 1, 4 and 6 be deemed the same criminal conduct. The court declined to find these three crimes comprised the same criminal conduct and imposed an exceptional sentence of 36 months running concurrently, premised on the crimes being major economic offenses. Specifically, the court found the crimes constituted major economic offenses based on a high degree of sophistication (all counts) and attempted monetary loss greater than usual (counts 1, 4 and 6). Baldwin appeals.

## II

Baldwin first argues that the trial court abused its discretion in admitting evidence of mail received by Baldwin addressed to other people, and of credit cards and vehicle titles in "Kaytie Allshouse's" name found during the search of the Granite Falls house. She contends that the evidence was improperly admitted because it was both irrelevant and unduly prejudicial. We disagree.

█ The admissibility of evidence is within the discretion of the trial court and will not be disturbed on appeal absent a showing of abuse.[2] Abuse occurs only where discretion is exercised on untenable grounds or for untenable reasons.[3]

█ To be relevant, evidence must meet two requirements: (1) the evidence must have a tendency to prove or disprove a fact (probative value) and (2) that fact must be of consequence in the context of the other facts and the

---

[2] *Harris v. Robert C. Groth, M.D., Inc.*, 99 Wn.2d 438, 450, 663 P.2d 113 (1983).

[3] *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

applicable substantive law (materiality).[4] Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.[5]

■ Identity theft, as charged here, is defined as follows:

> No person may knowingly use or knowingly transfer a means of identification of another person with the intent to commit, or to aid or abet, any unlawful activity harming or intending to harm the person whose identity is used, or for committing any felony.[6]

The trial court properly admitted evidence of the receipt of mail in numerous other names because Baldwin had forged Schultz's and Hopey's names to rent these boxes. Thus, the evidence was probative of Baldwin's having "knowingly use[d] or knowingly transfer[red] a means of identification . . . with the intent to commit . . . [a crime of forgery] harming or intending to harm"[7] Monica Schultz (count 1) and Carol Hopey (count 3). Moreover, the trial court correctly determined that Baldwin's having used Allshouse's name on the credit cards and vehicle titles was evidence of Baldwin's intent to harm Allshouse, an element the State had to prove beyond a reasonable doubt.

Baldwin next argues that there was insufficient evidence to convict her of theft of identity under counts 1, 2 and 3 because the State failed to prove that she harmed or intended to harm the person whose identity was used. Again, we disagree.

---

[4] 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 401.3, at 215 (4th ed. 1999); *Davidson v. Mun. of Metro. Seattle*, 43 Wn. App. 569, 573, 719 P.2d 569 (1986).

[5] ER 403.

[6] Former RCW 9.35.020(1) (1999).

[7] Former RCW 9.35.020(1).

Harm was defined by a supplemental instruction proposed by the defense: "Harm means harm to a person's privacy, financial security or other interest." The testimony of Schultz and Allshouse provided sufficient evidence of intent to harm in counts 1 (theft of Allshouse's identity) and 2 (theft of Schultz's identity). The jury could reasonably infer an attempt to harm Hopey and Schultz by Baldwin's renting of mailboxes in their names, and unauthorized receipt of mail at those boxes.

There was also evidence in the record to show Allshouse suffered actual harm; documents seized in the house indicated "Allshouse's" homeowners insurance was cancelled for having too much debris on the porch and too many discarded cars in the yard. Additionally, Allshouse's putative obligation for over $50,000 as purchaser of the real property could potentially affect her credit. Viewed in a light most favorable to the State, this evidence was sufficient for the jury to convict on all three counts of theft of identity.

Baldwin next asserts that count 1 of identity theft and counts 4 and 6 of forgery involve the same criminal conduct and should have been scored accordingly. We disagree, because the counts involve separate victims.

■ Crimes encompass the same criminal conduct if they involve the same criminal intent and were committed against the same victim at the same time and place.[8] If these three elements are met, the trial court must count "two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim" as one offense for the purpose of computing the defendant's criminal history at sentencing.[9]

There were two deeds of trust, conveyed to two different grantees. Thus, there were three victims: Kaytie Allshouse, the institutional lender, and the sellers, Diane Masin and

---

[8] Former RCW 9.94A.400(1)(a) (2000) (recodified as RCW 9.94A.589 by Laws of 2001, ch. 10, § 6); *State v. Vike*, 125 Wn.2d 407, 410, 885 P.2d 824 (1994).

[9] Former RCW 9.94A.400(1)(a); *State v. Hollis*, 93 Wn. App. 804, 817, 970 P.2d 813 (1999).

David Swadberg. Because the three counts involved three separate victims, the trial court correctly concluded that the crimes do not constitute the same criminal conduct.

Baldwin next contends that separate convictions and punishments for counts 1, 4, and 6 twice expose her to jeopardy. Her contention fails because each offense, as charged, includes elements not included in the other and each offense includes different victims.

█ The double jeopardy clause is not violated if the Legislature specifically authorizes multiple punishments.[10] Washington applies the "same evidence" test to determine legislative intent.[11] By this test, a defendant cannot be convicted of offenses that are identical both in fact and in law.[12] The convictions stand, however, if there is an element in each offense which is not included in the other, and if proof of one offense would not necessarily also prove the other.[13]

██ Proof of theft of identity does not ipso facto prove forgery. Forgery requires the making, completion, or alteration of a written instrument. Theft of identity, on the other hand, requires use of a means of identification with the *intent* to commit an unlawful act.[14] Thus, a jury could find Baldwin guilty of theft of identity, but not forgery. Because the elements of the two crimes are not the same, there is a strong presumption that the Legislature authorized multiple punishments for the same crime.[15]

█ In addition to the three crimes not being the same in law, they are not the same in fact. As noted in *State v.*

---

[10] *Garrett v. United States*, 471 U.S. 773, 778, 105 S. Ct. 2407, 85 L. Ed. 2d 764 (1985) (citing *Albrecht v. United States*, 273 U.S. 1, 11, 47 S. Ct. 250, 71 L. Ed. 505 (1927)).

[11] *State v. Calle*, 125 Wn.2d 769, 777-78, 888 P.2d 155 (1995).

[12] *Calle*, 125 Wn.2d at 777.

[13] *State v. Vladovic*, 99 Wn.2d 413, 423, 662 P.2d 853 (1983); *Calle*, 125 Wn.2d at 777.

[14] *Compare* former RCW 9.35.020(1) *with* RCW 9A.60.020.

[15] *See Vladovic*, 99 Wn.2d at 423.

*McJimpson*,[16] two crimes may not be the same in fact even though they arose from the same transaction.[17] The court in *McJimpson* held that because each offense harmed a different victim, they were not the same in fact. Thus, the two offenses were not the same offense under the "same evidence" test.[18] The same reasoning applies to this case. Baldwin was not subjected to double jeopardy because counts 1, 4 and 6 each has different victims.

Nor are we persuaded by Baldwin's assertion that the convictions for theft of identity and forgery merge. The merger doctrine applies only when the Legislature has clearly indicated that to prove a particular degree of a crime, "the State must prove not only that a defendant committed that crime . . . but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes."[19] It is relevant only when a crime is "elevated to a higher degree by proof of another crime proscribed elsewhere in the criminal code."[20]

Here, neither of these crimes are crimes of degree; thus, neither crime elevates the other. Baldwin counters that to be convicted of identity theft, the State had to prove forgery. She claims that forgery is therefore an element of and merely incidental to the central crime of theft of identity, thus merging the two offenses. This "lesser included" offense argument fails because the State was not required to prove forgery in order to convict of theft of identity. Accordingly, the two crimes do not merge.

We next address Baldwin's contention that because theft of identity is a new crime, there is not yet any basis to

---

[16] 79 Wn. App. 164, 901 P.2d 354 (1995).

[17] *McJimpson*, 79 Wn. App. at 169 (citing *Vladovic*, 99 Wn.2d at 423 (offenses committed during a single transaction are not necessarily the "same offense" for purposes of double jeopardy)).

[18] *McJimpson*, 79 Wn. App. at 169.

[19] *Vladovic*, 99 Wn.2d at 421.

[20] *State v. Parmelee*, 108 Wn. App. 702, 710, 32 P.3d 1029 (2001) (citing *State v. Eaton*, 82 Wn. App. 723, 730, 919 P.2d 116 (1996)).

distinguish the charged conduct from other crimes in the same category.

As charged to the jury, the elements of the crime were that:

Baldwin knowingly used or transferred a means of identification of Kaytie Allshouse (in count 1), Monica Schultz (count 2) and Carol Hopey (count 3) with the intent to commit or to aid in the commission of a crime of forgery harming or intending to harm Kaytie Allshouse (count 1), Monica Schultz (count 2), and Carol Hopey (count 3).

Although identity theft is a relatively new crime, forgery has been on the statute books since the early years of statehood.[21] Since passage of the Sentencing Reform Act of 1981[22] (SRA), our courts have had ample opportunity to examine exceptional sentences imposed for forgery.[23] The trial court is in the best position to identify uses of means of identification with intent to commit forgery which show a high degree of sophistication or complex planning, or involve a greater than usual attempted monetary loss.[24] Therefore, we will examine the trial court's findings and conclusions in the context of forgery.

We conclude that the record amply supports the trial court's conclusion that Baldwin committed a major economic offense when she purchased a house and vehicles using stolen identities.

 The trial court imposed an exceptional sentence premised on the crimes being "major economic offenses." A major economic offense can be identified by consideration of any of the following factors:

(i) The current offense involved multiple victims or multiple incidents per victim;

---

[21] *See, e.g.*, Laws of 1909, ch. 249, § 331, codified as former RCW 9.44.020, *repealed by* Laws of 1975, ch. 260, § 9A.92.010.

[22] Ch. 9.94A RCW.

[23] *See State v. Hutsell*, 120 Wn.2d 913, 845 P.2d 1325 (1993); *State v. Young*, 97 Wn. App. 235, 984 P.2d 1050 (1999); *State v. Calvert*, 79 Wn. App. 569, 903 P.2d 1003 (1995); *State v. Amo*, 76 Wn. App. 129, 882 P.2d 1188 (1994).

[24] *See State v. Solberg*, 122 Wn.2d 688, 707, 861 P.2d 460 (1993).

(ii) The current offense involved attempted or actual monetary loss substantially greater than typical for the offense;

(iii) The current offense involved a high degree of sophistication or planning or occurred over a lengthy period of time; or

(iv) The defendant used his or her position of trust, confidence, or fiduciary responsibility to facilitate the commission of the current offense.[25]

Only one of the four cited factors need be present for the criminal conduct to comprise a "major economic offense."[26] Here, the sentencing court based its finding of "major economic offense" on the crimes (1) exhibiting a high degree of sophistication (all counts), and (2) involving an attempted monetary loss greater than usual (counts 1, 4, and 6).

As to the counts related to Allshouse, 1 (identity theft), 4 (forgery) and 6 (forgery), the court found major economic impact premised on attempted monetary loss substantially greater than typical. At sentencing, the court observed that Baldwin "tied up someone's credit with thousands and thousands of dollars. This is not a $100 or $2,000 or $5,000 check that she obligated this person to. She obligated her on a mortgage and a contract on the sale of real estate." The record supports this conclusion. This basis, standing alone, supports the sentence imposed.[27]

We reach the same conclusion with regard to the finding of a high degree of sophistication. The general rule is that in order to rely upon the aggravating factor of high degree of sophistication greater than typical, the sophistication must be of a " 'kind not usually associated with the

---

[25] Former RCW 9.94A.390(2)(c) (2000) (recodified as RCW 9.94A.535 by Laws of 2001, ch. 10, § 6).

[26] *State v. Branch*, 129 Wn.2d 635, 645, 919 P.2d 1228 (1996).

[27] Here the court stated that "[f]or the record, I will note that if I am incorrect on any of these as grounds for exceptional sentence, if any one of them were to stand on appeal, I would find that that alone is sufficient and would still be my opinion that the sentence I give should be the amount of sentence in this case." *See Branch*, 129 Wn.2d at 645.

commission of the offenses in question.' "[28] Here, the trial court found that:

> These cases, in particular, the one wherein she purchased a home using somebody else's identity, in my findings were more sophisticated than the usual theft of identity. She created all kinds of forms of identification and had specific information and purchased other assets to put on the form so that she could get approval of the loan, including buying automobiles, and so forth, in other person's names. They were highly sophisticated crimes, and I think that the record is really quite clear on that.

Baldwin correctly notes that the record fails to establish that she obtained assets in other people's names in order to purchase the house. But the trial court could infer from the evidence that assets were obtained in other people's names to secure credit needed for additional purchases. Baldwin used three different false identities with matching driver's licenses. She acquired title to four different vehicles using two of these names, bought auto insurance in all three names, bought homeowners insurance under one of the names, possessed a social security card in one of the names, and had acquired two VISA cards in one of the names. She rented two separate mailboxes in two of the names, and subsequently received numerous pieces of mail addressed to yet 15 other names. She also managed to buy a home under one of the names. The depth and breadth of Baldwin's conduct reveals a level of sophistication beyond the simple use of a means of identification with intent to commit a forgery.

■ Baldwin next argues that the reasons provided by the court do not justify an exceptional sentence as a matter of law because the Legislature considered this type of conduct in setting the standard sentence range. She points to the statement of legislative intent found in RCW 9.35.001:

> The legislature finds that financial information is personal and sensitive information that if unlawfully obtained by others may

---

[28] *State v. Dunaway*, 109 Wn.2d 207, 219, 743 P.2d 1237 (1987) (quoting *State v. Payne*, 45 Wn. App. 528, 531, 726 P.2d 997 (1986)).

do significant harm to a person's privacy, financial security, and other interests. The legislature finds that unscrupulous persons find ever more clever ways, including identity theft, to improperly obtain and use financial information. The legislature intends to penalize unscrupulous people for improperly obtaining financial information.

Although the statement of legislative intent focuses on the economic harm caused by identity theft, it in no way precludes the use of exceptional sentences in appropriate cases.

 Next, Baldwin contends that her sentence is clearly excessive. Once the sentencing court finds substantial and compelling reasons for imposing an exceptional sentence, the court is permitted to use its discretion in determining the precise length of the sentence, and its decision will not be overturned absent an abuse of discretion.[29] A sentence is clearly excessive if it is based on untenable grounds or reasons, if it is manifestly unreasonable, or if no reasonable person would impose it.[30]

The trial court's reasons, which we have upheld, were not untenable. And, contrary to Baldwin's assertion, the court did not sentence her to twice the high end of the standard range. Baldwin faced three counts of identity theft and two counts of forgery on an offender score of 8. Theft of identity is an unranked offense with a range of 0-12 months. The standard range for forgery for someone with an offender score of 8 is 17-22 months. The court imposed an exceptional sentence of 36 months on all counts, running concurrently. The sentence was not clearly excessive.

 Baldwin next argues that the two statutes relied on as bases for the exceptional sentence are vague as applied to her, and violate her right to due process because they do not provide explicit standards to protect against

---

[29] *State v. Ritchie*, 126 Wn.2d 388, 392, 894 P.2d 1308 (1995).

[30] *State v. Strong*, 23 Wn. App. 789, 794, 599 P.2d 20 (1979).

arbitrary application.[31] We conclude that the statutes do not set forth terms so vague that persons of common intelligence must guess at their meaning and differ as to its application. Nor do they create a risk of arbitrary enforcement by the use of inherently subjective terms or by inviting an inordinate amount of discretion.

Under the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution, a penal statute is impermissibly vague if: (1) the statute " ' "does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed" ' " or (2) the statute " ' "does not provide ascertainable standards of guilt to protect against arbitrary enforcement." ' "[32] This test serves two purposes. First, it ensures that citizens receive fair warning of what conduct they must avoid, and second, it protects citizens from "arbitrary, ad hoc, or discriminatory law enforcement."[33]

Any challenge for vagueness must overcome two burdens: the presumption of constitutionality and recognition that some degree of vagueness is inherent in any case.[34] If persons " 'of ordinary intelligence can understand a penal statute, notwithstanding some possible areas of disagreement, it is not wanting in certainty.' "[35] Impossible standards of specificity are not required.[36]

Applying these principles, we reject Baldwin's argument that former RCW 9.94A.120 (2000) and former RCW 9.94A-

---

[31] Former RCW 9.94A.120 (2000) (recodified as RCW 9.94A.505 by Laws of 2001, ch. 10, § 6); former RCW 9.94A.390.

[32] *State v. Williams*, 144 Wn.2d 197, 215, 26 P.3d 890 (2001) (quoting *State v. Halstien*, 122 Wn.2d 109, 117, 857 P.2d 270 (1993) (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990))).

[33] *Halstien*, 122 Wn.2d at 117.

[34] *Williams*, 144 Wn.2d at 216.

[35] *State v. Andree*, 90 Wn. App. 917, 921, 954 P.2d 346 (1998) (emphasis omitted) (quoting *City of Seattle v. Eze*, 111 Wn.2d 22, 27, 759 P.2d 366 (1988)).

[36] *Andree*, 90 Wn. App. at 921.

.390 (2000) are unconstitutionally vague as applied to her. Former RCW 9.94A.120 provides in relevant part:

When a person is convicted of a felony, the court shall impose punishment as provided in this section.

(1) Except as authorized in subsections (2), (4), (5), (6), and (8) of this section, the court shall impose a sentence within the sentence range for the offense.

(2) The court may impose a sentence outside the standard sentence range for that offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence.

Former RCW 9.94A.390 provides in part: "If the sentencing court finds that an exceptional sentence outside the standard range should be imposed in accordance with RCW 9.94A.120(2)" the sentencing court may consider the nonexclusive list of aggravating and mitigating factors set forth in the statute.

The court found that Baldwin's crimes constituted major economic offenses. Major economic offenses are defined by former RCW 9.94A.390 in terms that are clear and comprehensible. The statutory terminology is not so vague that persons of common intelligence must guess at its meaning and differ as to its application. Nor does it create a risk of arbitrary enforcement by the use of inherently subjective terms or by inviting an inordinate amount of discretion. As the court in *State v. Perez*[37] noted, the determination of when facts make a crime more onerous than typical is "necessarily subjective."[38] But, this inherent subjectivity is consistent with and required by the SRA.[39]

Lastly, Baldwin contends that the vagueness of former RCW 9.94A.120 and former RCW 9.94A.390 as applied to her deprive her of her right to appeal. Because Baldwin's vagueness challenge fails, so too does her argument that she has been denied the right to appeal. The trial court's

[37] 69 Wn. App. 133, 847 P.2d 532 (1993).

[38] *Perez*, 69 Wn. App. at 138.

[39] *Perez*, 69 Wn. App. at 138.

written and oral findings and conclusions are supported by the record, and are available for review.

For the foregoing reasons, we affirm the trial court's ruling in its entirety.

Affirmed.

BECKER, C.J., and ELLINGTON, J., concur.

Review granted at 148 Wn.2d 1001 (2003).