[No. 72710-4. En Banc.]
Argued March 27, 2003. Decided November 6, 2003.

THE STATE OF WASHINGTON, *Respondent*, v. JEANNE PEARL BALDWIN, *Petitioner*.

*Shannon B. Marsh* and *Gregory C. Link* (of *Washington Appellate Project*), for petitioner.

*Janice E. Ellis, Prosecuting Attorney,* and *Seth Aaron Fine* and *Charles F. Blackman, Deputies,* for respondent.

ALEXANDER, C.J. — A Snohomish County Superior Court jury found Jeanne Pearl Baldwin guilty of three counts of identity theft and two counts of forgery. The trial judge thereafter imposed concurrent exceptional sentences of 36 months on all counts. The Court of Appeals affirmed Baldwin's convictions and sentences, concluding, in part, that her separate convictions for identity theft (count 1) and forgery (counts 4 and 6) did not twice expose her to jeopardy and that the statutory factors upon which her exceptional sentences were based are not vague. Baldwin obtained review by this court, contending here, as she did at the Court of Appeals, that her convictions on counts 1, 4, and 6 violate double jeopardy prohibitions of the Washington and United States Constitutions and that the statutory factors upon which her exceptional sentences were based are unconstitutionally vague and serve to deny her of her right to appeal. We affirm the Court of Appeals.

I

Jeanne Baldwin purchased real property in Granite Falls, Washington. In doing so, she represented herself as "Kaytie Allshouse," an actual person who was not known to Baldwin. Clerk's Papers (CP) at 64. To carry out her scheme, Baldwin forged Allshouse's name to two deeds of trust. The first deed of trust secured a loan from Global Holdings, a mortgage company, for $45,500. The second deed of trust was in favor of the sellers of the real estate, Diane Masin and David Swadberg, and secured an obligation to pay them $6,500.

A search by Snohomish County Sheriff's officers of the house located on the Granite Falls property yielded a wallet containing a Washington state driver's license in the name of "Kaytie Allshouse." CP at 63. The license contained

Baldwin's picture. The search also turned up various items, including credit cards and vehicle titles, in the name of "Kaytie Allshouse" and two other persons, "Carol Hopey" and "Monica Schulz." *See id.*

Baldwin was charged with six crimes, four of which related to the purchase of the Granite Falls property, to wit: (1) theft of Kaytie Allshouse's identity, count 1; (2) forgery of Allshouse's name on the deed of trust given to Global Holdings, count 4; (3) forgery of Allshouse's name on the second deed of trust given to Masin and Swadberg, count 6; and (4) forgery of Allshouse's name on an "Adjustable Rate Rider" given to Global Holdings, count 5. CP at 64. Baldwin was also charged with theft of the identities of Monica Schulz, count 2, and Carol Hopey, count 3.

At trial, Kaytie Allshouse testified that she did not sign her name to the trust deeds. When asked how she felt about finding out that someone had used her name to buy a house, she stated, "I don't want [the house and property] in my name. It's not mine, I do not own it. . . . I just can't afford it, I don't want it." 2 Verbatim Report of Proceedings (VRP) at 148.

The jury found Baldwin guilty on all charges except count 5. Baldwin contended at sentencing that counts 1, 4, and 6 should be deemed the "same criminal conduct" and that the sentencing court's failure to do so resulted in her being twice punished for the same crime. VRP (sentencing) at 10. The trial court imposed an exceptional sentence of 36 months on each count,[1] ordering that the sentences run concurrently. The trial court premised the sentences on its conclusion that all of the crimes were "major economic offenses." CP at 26. This conclusion was based on a finding that all counts were committed with a "high degree of sophistication [and planning]" and that the "degree of sophistication was greater than that typical of theft of identity." *Id.* It found, additionally, that counts 1, 4, and 6

---

[1] Baldwin's offender score was 8, which meant that the standard sentence was 17 to 22 months for the forgeries and 0 to 12 months for the thefts of identity.

involved an "attempted monetary loss substantially greater than typical for the theft of identity." *Id.*

Baldwin appealed her convictions and the sentences to the Court of Appeals, Division One. There she raised numerous assignments of error, including a contention that: (1) separate convictions and punishments for counts 1, 4, and 6 twice exposed her to jeopardy; and (2) the statutes that the statutory factors upon which the exceptional sentences were based are unconstitutionally vague as applied to the identity theft counts.

The Court of Appeals rejected Baldwin's double jeopardy argument, concluding that the offenses charged in counts 1, 4, and 6, forgery and theft of identity, were not the same in law or fact. It also rejected Baldwin's contention that the statutes upon which the trial court relied in imposing the exceptional sentences were vague as applied. *State v. Baldwin*, 111 Wn. App. 631, 45 P.3d 1093 (2002).

Baldwin sought review by this court, contending here as she did at the Court of Appeals that (1) her separate convictions and punishments for counts 1, 4, and 6 placed her in jeopardy twice for the same offense; and (2) the statutes upon which her exceptional sentences were based are unconstitutionally vague and thus violative of due process. We granted her petition at 148 Wn.2d 1001 (2003).

II

A. Double Jeopardy

Baldwin contends that her theft of Allshouse's identity (count I), the forgery in Allshouse's name of the deed of trust to Global Holdings (count 4), and the forgery of the second deed of trust to Masin and Swadberg (count 6) all constitute the same offense, and, thus, her convictions for those offenses violate the double jeopardy provisions of the federal and state constitutions.

The double jeopardy clause of the United States Constitution guarantees that no "person [shall] be subject for the same offense to be twice put in jeopardy of life or

limb." U.S. CONST., amend. V. Article I, section 9 of the Washington Constitution similarly indicates that "[n]o person shall be . . . twice put in jeopardy for the same offense." Essentially, these provisions prohibit multiple prosecutions or punishments for the same offense. Within this constraint, however, the legislature is free to define criminal conduct and specify its punishment. *State v. Calle*, 125 Wn.2d 769, 776, 888 P.2d 155 (1995). Where, as here, an act or transaction violates more than one criminal statute, the double jeopardy question turns on whether the legislature intended to impose punishment under both statutes for the same act or transaction. *Id.*

Our initial inquiry is whether the language of the statute expressly allows convictions under both statutes for the same act or transaction. *Id.* If the statutes are silent on this point, the court is to turn to principles of statutory construction. *Id.* at 777. The first rule of construction is the "same evidence" test. Under this test, two statutory offenses are the "same" for double jeopardy purposes if the offenses "are identical both in fact and in law." *Id.*; *see State v. Adel*, 136 Wn.2d 629, 633, 965 P.2d 1072 (1998). If each offense includes an element not included in the other, and proof of one would not necessarily prove the other, the offenses are not constitutionally the same under this test. As we said in *State v. Vladovic*, 99 Wn.2d 413, 423, 662 P.2d 853 (1983):

> In order to be the "same offense" for purposes of double jeopardy the offenses must be the same in law and in fact. If there is an element in each offense which is not included in the other, and proof of one offense would not necessarily also prove the other, the offenses are not constitutionally the same and the double jeopardy clause does not prevent convictions for both offenses.

Washington's "same evidence" test bears a similarity to the rule set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932), where the court said:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the

test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

Here, the theft of identity and forgery statutes do not expressly allow punishment under both statutes for the same act or transaction. But neither do they satisfy the "same evidence" test since each offense contains an element not contained in the other. *See State v. Gocken*, 127 Wn.2d 95, 896 P.2d 1267 (1995). As the Court of Appeals observed, "[f]orgery requires the making, completion, or alteration of a written instrument,"[2] whereas identity theft only "requires use of a means of identification with the *intent* to commit an unlawful act."[3] *Baldwin*, 111 Wn. App. at 641.

But, even if two statutes do not satisfy the "same evidence" test, they nonetheless will be considered the same if the legislature has otherwise clearly indicated its intent

---

[2] RCW 9A.60.020 defines forgery as:

"(1) A person is guilty of forgery if, with intent to injure or defraud:

"(a) He falsely makes, completes, or alters a written instrument or;

"(b) He possesses, utters, offers, disposes of, or puts off as true a written instrument which he knows to be forged.

"(2) Forgery is a class C felony."

[3] Former RCW 9.35.020 (1999) provided:

"(1) No person may knowingly use or knowingly transfer a means of identification of another person with the intent to commit, or to aid or abet, any unlawful activity harming or intending to harm the person whose identity is used, or for committing any felony.

"(2) For purposes of this section, 'means of identification' means any information or item that is not describing finances or credit but is personal to or identifiable with any individual or other person, including any current or former name of the person, telephone number, and electronic address or identifier of the individual or any member of his or her family, including the ancestor of such person; any information relating to a change in name, address, telephone number, or electronic address or identifier of the individual or his or her family; any social security, driver's license, or tax identification number of the individual or any member of his or her family; and other information which could be used to identify the person, including unique biometric data.

"(3) Violation of this section is a class C felony.

"(4) A person [who] violates this section is liable for five hundred dollars or actual damages, including costs to repair the person's credit record, whichever is greater, and reasonable attorneys' fees. If the person violating this section is a business that repeatedly violates this section, that person also violates the Consumer Protection Act, chapter 19.86 RCW."

that the same conduct or transaction will not be punished under both statutes. *Calle*, 125 Wn.2d at 778-80.

Baldwin urges that under *State v. Potter*, 31 Wn. App. 883, 888, 645 P.2d 60 (1982), the Court of Appeals should have compared the elements in light of what actually occurred, and that proof of identity theft through forgery would always establish forgery. Thus, Baldwin reasons, her "use" of Allshouse's identity was the completion of the written document with intent to defraud. This sort of "subtle distinction[ ]" prompted the Court of Appeals in *Potter* to reject the results of the "same evidence" and *Blockburger* tests when assessing a double jeopardy challenge. *Id.* This court seemingly approved of the *Potter* approach in *Calle*, 125 Wn.2d 769, when we said the *Blockburger* and "same evidence" tests, while significant indicators of legislative intent, are presumptive rather than dispositive of the question whether two offenses are the same. Since the legislature has authority to prescribe punishments, courts should also look to statutory language and legislative intent to determine whether the legislature intended (within constitutional bounds) multiple prosecutions or punishments for the same act. The presumption accorded by the same evidence and *Blockburger* tests should, however, be overcome only by "clear evidence." *Id.* at 780.

In *Potter*, the court held that the defendant's conviction for reckless endangerment and reckless driving violated double jeopardy "because the State necessarily had to prove reckless driving [in order] to prove reckless endangerment." *Potter*, 31 Wn. App. at 886. The same cannot be said here because, as Baldwin concedes, "it is possible to commit identity theft without committing forgery." Pet. for Review at 10. As we have indicated, proof of theft of identity would not *necessarily* prove forgery and, thus, the two crimes are not the same in law. Furthermore, Baldwin's contention, which relies on *Potter*, that her convictions violate legislative intent fails. We say that because Baldwin does not present any historical or legislative history of the forgery

and identity theft statutes which demonstrates intent on the part of the legislature to authorize only one punishment for the offenses. The double jeopardy provisions of the state and federal constitutions are, therefore, not violated.

■ In addition, we believe the Court of Appeals was correct in concluding that when offenses harm different victims, the offenses are not factually the same for purposes of double jeopardy. *State v. McJimpson*, 79 Wn. App. 164, 169, 901 P.2d 354 (1995). Here, Allshouse was the victim of identity theft, Global Holdings was the victim of the forged deed of trust, and Masin and Swadberg were the victims of the forged subordinate deed of trust. Because the offenses were not factually identical, the multiple convictions did not violate double jeopardy.

## B. Vagueness

Baldwin contends that former RCW 9.94A.120 (2000) and former RCW 9.94A.390 (2000)[4] are unconstitutionally vague " 'as applied' to her identity theft convictions"[5] and deprive her of her right to appeal. Pet'r's Suppl. Br. at 12. Specifically, she asserts that these statutes did not provide explicit standards to protect against arbitrary application, there being, in her words, "no objective framework to determine when an identity theft involves a degree of sophistication that is 'greater than that typical of theft of identity' or when there is an attempted monetary loss substantially 'greater than typical for theft of identity.' " *Id.* Thus, she argues, this court is unable to determine what led the sentencing court to conclude that an exceptional sentence was warranted.

---

[4] Former RCW 9.94A.120 was modified by Laws of 2001, ch. 10, § 6 and recodified as RCW 9.94A.505. Former RCW 9.94A.390 was modified by Laws of 2001, ch. 10, § 6 and recodified as RCW 9.94A.535.

[5] Baldwin does not appear to be assailing the exceptional sentences that were imposed for the forgeries. Thus, even if we were to agree with her that the two statutes were vague as applied to the identity theft convictions, her victory would not avail her in any meaningful way since the concurrent 36-month sentences for each forgery conviction would remain intact. The State has not, however, made this argument.

The Court of Appeals rejected Baldwin's argument, concluding that the statutes "do not set forth terms so vague that persons of common intelligence must guess at their meaning and differ as to [their] application." *Baldwin*, 111 Wn. App. at 647. It further held that the statutes do not "create a risk of arbitrary enforcement by the use of inherently subjective terms or by inviting an inordinate amount of discretion." *Id.*

 The State contends that the statutory sentencing regime that Baldwin assails is not susceptible to a vagueness attack. In support of this assertion, the State cites *State v. Jacobson*, 92 Wn. App. 958, 965 P.2d 1140 (1998), *review denied*, 137 Wn.2d 1033, 980 P.2d 1282 (1999). There, the Court of Appeals, Division One, considered a vagueness challenge to former RCW 9.94A.120 and former RCW 9.94A.390 and opined that the void for vagueness doctrine should have application only to laws that " 'proscribe or prescribe conduct' " and that it was "analytically unsound" to apply the doctrine to laws that merely provide directives that judges should consider when imposing sentences. *Jacobson*, 92 Wn. App. at 966, 967 (quoting *United States v. Wivell*, 893 F.2d 156, 159 (8th Cir. 1990)). We agree with the State's contention.

A vagueness analysis encompasses two due process concerns. First, criminal statutes must be specific enough that citizens have fair notice of what conduct is proscribed. Second, laws must provide ascertainable standards of guilt to protect against arbitrary arrest and prosecution. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 168, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972); *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990). Both prongs of the vagueness doctrine focus on laws that prohibit or require conduct. *See Wivell*, 893 F.2d at 159.

Here, at issue are two sentencing statutes. Former RCW 9.94A.120(2) provides for the imposition of a standard range sentence unless the sentencing court finds that there are substantial and compelling reasons that justify an exceptional sentence. In deciding whether or not to impose

an exceptional sentence, the trial court may consider both statutory and nonstatutory factors. Former RCW 9.94A.120(2). The other sentencing statute, former RCW 9.94A.390, provides a list of mitigating and aggravating circumstances that can justify an exceptional sentence. The list of circumstances is illustrative only; any other substantial and compelling reasons may support a sentence outside the standard range. Former RCW 9.94A.390. The trial court in this case found that Baldwin's conduct warranted an exceptional sentence under considerations listed in former RCW 9.94A.390(2)(d) (major economic offense).

The sentencing guideline statutes challenged in this case do not define conduct nor do they allow for arbitrary arrest and criminal prosecution by the State. *Wivell*, 893 F.2d at 160. Sentencing guidelines do not inform the public of the penalties attached to criminal conduct nor do they vary the statutory maximum and minimum penalties assigned to illegal conduct by the legislature. A citizen reading the guideline statutes will not be forced to guess at the potential consequences that might befall one who engages in prohibited conduct because the guidelines do not set penalties. Thus, the due process considerations that underlie the void-for-vagueness doctrine have no application in the context of sentencing guidelines.

We recognize that by agreeing with the State on this issue, we contravene our decision in *State v. Rhodes*, 92 Wn.2d 755, 600 P.2d 1264 (1979). In *Rhodes*, the defendant claimed that the " 'manifest injustice' " exception to a standard range sentence was unconstitutionally vague. *Id.* at 758. Although we acknowledged there that "most vagueness challenges are directed at statutes which prohibit particular conduct without defining that conduct," we went on to hold that "[t]he promulgation of standard disposition ranges for juvenile offenders creates a constitutionally protected liberty interest." *Id.* at 759, 758. Accordingly, this court opined that the juvenile dispositional standards were subject to due process protections against arbitrary enforcement, such as vagueness challenges.

Under principles of stare decisis, we are not to overturn a prior holding unless it is shown that it is incorrect or harmful. *In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970). Here, a showing has been made that our decision in *Rhodes* was incorrect. If we were to adhere to *Rhodes*, we would necessarily have to rely on a conclusion that former RCW 9.94A.120 and former RCW 9.94A.390 create a constitutionally protected liberty interest. While such a conclusion would be consistent with *Rhodes*, it would directly conflict with the United States Supreme Court's decision in *Lockett v. Ohio*, 438 U.S. 586, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978) as well as other, more recent, precedent of this court. In *Lockett*, the Supreme Court addressed the differences in a sentencing court's discretion in noncapital cases and capital cases. The Court noted that in noncapital cases a defendant does not have a constitutional right to sentencing guidelines. *Id.* at 602.

Subsequent to the decision in *Rhodes*, this court explained that when a state law places substantive limits on decision making, such law can create an expectation that may rise to the level of a protected liberty interest. *In re Pers. Restraint of Cashaw*, 123 Wn.2d 138, 144, 866 P.2d 8 (1994); *see Toussaint v. McCarthy*, 801 F.2d 1080 (9th Cir. 1986). However, before a state law can create a liberty interest, it must contain " 'substantive predicates' " to the exercise of discretion and " 'specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow.' " *Cashaw*, 123 Wn.2d at 144 (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 463, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989)). "Thus, laws that dictate particular decisions given particular facts can create liberty interests, but laws granting a significant degree of discretion cannot." *Id.*

Fundamental to both statutes being challenged is the notion that a court is free to exercise discretion in fashioning a sentence. The only restriction on discretion is a requirement to articulate a substantial and compelling reason for imposing an exceptional sentence. The reason

relied on by the court may be one of the considerations listed in former RCW 9.94A.390, but it need not be. The guidelines are intended only to structure discretionary decisions affecting sentences; they do not specify that a particular sentence must be imposed. Since nothing in these guideline statutes requires a certain outcome, the statutes create no constitutionally protectable liberty interest.

We find it difficult to square *Rhodes'* conclusion that a sentence guideline creates a constitutional liberty interest with *Lockett*'s holding that no constitutional right to sentencing guidelines exists and with this court's own more recent statement in *Cashaw* that a liberty interest is not created by a statute unless application of the statute leads to a particular result. Further adherence to *Rhodes* would be harmful because it would turn every guideline into a constitutionally protected liberty interest. Therefore, our decision in *State v. Rhodes*, 92 Wn.2d 755, 600 P.2d 1264 (1979), is overruled.

### III

Baldwin's convictions on counts 1, 4 and 6, forgery and theft of identity, do not violate the double jeopardy provisions of the Washington and United States Constitutions because they are not the same in law and fact. Further, because sentencing guideline statutes are not subject to a vagueness analysis, Baldwin's claim that the sentencing guideline statutes at issue are unconstitutionally vague is without merit.

In sum, we affirm the decision of the Court of Appeals.

JOHNSON, MADSEN, SANDERS, IRELAND, BRIDGE, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.