## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34654-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JONATHAN HOWARD SHURTZ, | ) | |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Jonathan Shurtz, a juvenile, appeals a manifest injustice sentence imposed following his plea of guilty to second degree burglary. We affirm.

### FACTS AND PROCEDURAL BACKGROUND

Early one morning in May 2016, Jonathan Shurtz, then 17 years old, attempted to steal a half gallon of Malibu Rum from a Safeway store in Moses Lake—a store from which he had been permanently trespassed. When a Safeway employee yelled at Mr. Shurtz, he left the bottle behind and ran from the store. Located by police a short time later, Mr. Shurtz resisted being taken into custody and tried to hit an officer. He was detained, booked into the Grant County Juvenile Detention Center, and charged with second degree burglary, minor in possession of alcohol, and resisting arrest. He later pleaded guilty to second degree burglary.

At the outset of the July 2016 disposition hearing, the court reviewed a

predisposition diagnostic report prepared by the juvenile department that disclosed the

following matters, among others:

- Since September 2014, Mr. Shurtz's criminal history included 11 (or more) criminal adjudications, not counting the crimes charged in this matter.
- Mr. Shurtz had incurred 17 probation violations since November 2014 and spent approximately 190 days in detention in 2015.
- Before the charges in this matter, Mr. Shurtz had incurred 3 new criminal charges since the beginning of 2016.
- Mr. Shurtz had been provided multiple opportunities to engage in rehabilitative interventions, including aggression replacement training, functional family therapy, and mental health services but had failed to successfully complete them.
- Mr. Shurtz had been hospitalized 4 times due to crisis intervention and suicide attempts.
- While in detention, Mr. Shurtz had been involved in at least 44 incidents ranging from destruction of property to self-mutilation.
- Beginning in early childhood, Mr. Shurtz had been diagnosed with 9 mental health disorders and had received a multitude of psychiatric mental health services from several providers.
- Mr. Shurtz admitted to using marijuana and alcohol frequently and had never participated in any drug or alcohol treatment program.
- Mr. Shurtz struggled with maintaining attendance in school.

Ex. 1.

The representative of the juvenile department told the court the department was

recommending a manifest injustice sentence upward of 39 to 52 weeks. He stated that

the department had worked with Jonathan "very closely over the last year and a half" and

had concerns that it had exhausted the services and interventions that could be provided locally. Report of Proceedings (RP) at 18-19. He explained that a longer Juvenile Rehabilitation Administration (JRA) commitment would provide "a lot of available services that could be—at the disposal of [Mr. Shurtz] that a standard range wouldn't effectuate." RP at 20.

The court next heard from the prosecutor, who reported that it was the agreed recommendation of the State and the defense that Mr. Shurtz serve a 15 to 36 week sentence. He pointed out that while Mr. Shurtz had numerous convictions, they had been misdemeanors, and he had not been to JRA before—this would be his "first stint." RP at 19.

Defense counsel also advocated for the parties' standard range recommendation, pointing out that Mr. Shurtz's current conviction was for a nonviolent crime. She observed that Mr. Shurtz could be enrolled in drug and alcohol treatment during a standard range detention. She also told the court the family had not followed through with family therapy in the past.

The court heard last from Mr. Shurtz's father, who told the court:

> As bad as it sounds, I—I kind of lean towards agreeing with Juvenile's recommendation, so he can get the services we—We've done everything we can. Personal therapy, counseling, family therapy. I can't keep him in school, can't keep him at Skill Source. He won't do—service hours. He's not even nice at home. We give him the leeway, he can leave

3

in the morning and come—come back at—curfew. He does that, and it's a fight for an hour, just because he wants to fight with us.

We have to keep our other children separated from him for their safety.

So,—I—I—I agree with what—what [the juvenile department representative] has put together, just on the fact that that seems to be the only way to get his residential treatment that he needs, (inaudible) the time. When he comes home,—they say more therapy, more counseling; he won't go. He doesn't go. And I have to force him to take his med's.

So,—he's getting too old to do that, too.

RP at 23-24.

Having heard from everyone, the trial court stated that "based on the comments that were provided by the father, and obviously the report by the juvenile department, I am going to make a finding of manifest injustice." RP at 24. It imposed a 39 to 52 week sentence with credit for 70 days served. The aggravating factors that it found supported the manifest injustice sentence were that Mr. Shurtz had a recent criminal history or had failed to comply with conditions of a recent disposition order, and the existence of necessary treatment and a potential to reoffend if he did not receive that treatment.

Mr. Shurtz appeals.

## ANALYSIS

Mr. Shurtz argues that the trial court imposed a manifest injustice disposition that was clearly excessive and based on factors already considered in the recommended standard range disposition.

4

Under RCW 13.40.160(2), if a juvenile "court concludes . . . that disposition within the standard range would effectuate a manifest injustice the court shall impose a disposition outside the standard range." *See State v. Duncan*, 90 Wn. App. 808, 812, 960 P.2d 941 (1998). A "manifest injustice" is "a disposition that would either impose an excessive penalty on the juvenile or would impose a serious, and clear danger to society in light of the purposes of this chapter." RCW 13.40.020(19). These purposes include protecting the citizenry from criminal behavior, making the juvenile offender accountable for his behavior, providing rehabilitation and reintegration of juvenile offenders, providing necessary treatment for juvenile offenders, and encouraging the family to actively participate in the juvenile justice process. RCW 13.40.010(2)(a), (c), (f), (g), (m). In other words, "[t]he need for rehabilitation or treatment, the need to protect society from dangerous offenders, and the previous failure of noncustodial treatment or supervision are reasons that can support a sentence outside the standard range." *State v. Tauala*, 54 Wn. App. 81, 86, 771 P.2d 1188 (1989).

"To uphold a manifest injustice disposition, this court must find that (1) the reasons supplied by the disposition court are supported by the record, (2) those reasons clearly and convincingly support the conclusion that a disposition within the standard range would constitute a manifest injustice, and (3) the sentence imposed was neither clearly excessive nor clearly too lenient." *State v. Moro*, 117 Wn. App. 913, 918-19, 73 P.3d 1029 (2003) (citing RCW 13.40.230(2)).

5

*Reasons supplied.* A juvenile court must consider whether mitigating or aggravating factors exist and may consider statutory and nonstatutory factors. *State v. J.V.*, 132 Wn. App. 533, 540-41, 132 P.3d 1116 (2006) (footnote omitted). The trial court's findings of fact are reviewed under a clearly erroneous standard and we will reverse only if the findings are not supported by substantial evidence. *Moro*, 117 Wn. App. at 919. "Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding." *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

The aggravating factors found by the court were, again, "[Mr. Shurtz] has a recent criminal history or has failed to comply with conditions of a recent dispositional order or diversion agreement" and "[n]ecessary treatment for [Mr. Shurtz] and his potential to reoffend if he [did not] receive that treatment." Clerk's Papers at 33.

Mr. Shurtz seemingly asserts that misdemeanors and nonviolent offenses do not count as "recent criminal history" within the meaning of the statutory aggravating factor provided by RCW 13.40.150(3)(i)(iv). But he provides neither authority nor persuasive argument for ignoring the plainly general meaning of that expression. According to the juvenile department's report, Mr. Shurtz's criminal history began in September 2014 and includes crimes committed as recently as April 2016—a month before he committed the crimes at issue in this appeal.

Mr. Shurtz had 17 probation violations in the same time frame, spending 190 days in detention in 2015. Violating the terms of probation qualifies as an aggravating factor supporting a manifest injustice determination. *See State v. Meade*, 129 Wn. App. 918, 924, 120 P.3d 975 (2005).

The department's predisposition diagnostic report characterized Mr. Shurtz as "continu[ing] to rapidly recidivate criminally" and stated that the rate at which he continued to criminally offend and violate court orders "continues to escalate." Ex. 1 at 12. Substantial evidence supports the trial court's finding that Mr. Shurtz had a recent criminal history or had failed to comply with conditions of a recent dispositional order.

As for necessary treatment, Mr. Shurtz argues, relying on a statement to the court by Mr. Shurtz's father, that the court committed him to JRA solely because of a lack of treatment facilities in Moses Lake. If that were the case, it would violate RCW 13.40.150(5). But the department offered a different treatment-based reason for recommending a manifest injustice sentence: its report stated that Mr. Shurtz had a "need for *long-term* therapeutic interventions only facilitated through the State of Washington." Ex. 1 at 15 (emphasis added). It was recommending intensive mental health therapy services and assessments, aggression replacement training, educational programming and assessment, cognitive and dialectical behavioral therapy, functional family therapy, drug and alcohol assessment and treatment, and vocational/occupational training and programming. In response to the trial court's question at sentencing as to whether the

7

services could be completed in the standard range, the department representative indicated they could not, particularly because the State generally provides the services sequentially rather than simultaneously.

Under RCW 13.40.010(2)(g), "[i]t is . . . proper for a trial court to consider a juvenile's need for treatment in considering a manifest injustice determination." *J.V.*, 132 Wn. App. at 541. If a juvenile is considered a high risk to reoffend, "an extended period of structured residential care and specialized treatment may be appropriate." *Id.* Substantial evidence supports the trial court's finding that Mr. Shurtz's need for treatment and his potential to reoffend without it justified a manifest injustice sentence.

*Serious and clear danger.* Mr. Shurtz argues that the juvenile court's findings do not satisfy the requirement that the imposition of a standard range disposition would have presented a clear danger to society. For a manifest injustice finding to withstand appellate review, a standard range for the juvenile must present a serious and clear danger to society beyond a reasonable doubt. RCW 13.40.020(19); *State v. N.E.*, 70 Wn. App. 602, 854 P.2d 672 (1993). A serious and clear danger to society can include danger to the welfare of the juvenile and his future. *State v. Rhodes*, 92 Wn.2d 755, 761, 600 P.2d 1264 (1979), *overruled on other grounds, State v. Baldwin*, 150 Wn.2d 448, 78 P.3d 1005 (2003). Rapid and escalating recidivism presents a clear danger to society. *In re Welfare of Latson*, 45 Wn. App. 716, 719, 726 P.2d 1042 (1986).

Mr. Shurtz's recidivism and the escalating rate at which he was criminally offending and violating court orders presented a serious and clear danger to society. And his father described a particular clear and serious danger he presented within the Shurtz household as he became increasingly out of his parents' control. The evidence is clear and convincing.

*Not clearly excessive.* Finally, Mr. Shurtz argues the juvenile court's imposed disposition is clearly excessive because he could have received the recommended treatment within a standard range sentence. The department represented otherwise, however. And because Mr. Shurtz was given credit for time served and had already completed 10 weeks of whatever disposition was imposed, the standard range sentence recommended by the parties would have left only 5 to 26 weeks—insufficient time for him to obtain the treatment he needed.

"Once the court concludes that a disposition within the standard range would effectuate a manifest injustice . . . the court is vested with broad discretion in determining [the length of] the disposition." *J.V.*, 132 Wn. App. at 545. We will reverse a manifest injustice sentence based on its length "only if the sentence imposed is so clearly excessive as to constitute an abuse of discretion," and cannot be justified by any reasonable view of the record. *Tauala*, 54 Wn. App. at 86; *State v. P.*, 37 Wn. App. 773, 779, 686 P.2d 488 (1984). Given the amount of treatment being recommended, the

No. 34654-4-III
*State v. Shurtz*

desirability of sequential scheduling, and the prospect of some setbacks, it cannot be said

that a 39 to 52 week commitment is excessive.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Pennell, J.

10