

FILED
COURT OF APPEALS
STATE OF WASHINGTON
2014 JUN 16 AM 9: 10

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 71641-7-I |
| Respondent, | |
| v. | DIVISION ONE |
| DALE JACKSON PURSER, | UNPUBLISHED OPINION |
| Appellant. | FILED: June 16, 2014 |

LEACH, J. — Dale Purser appeals his convictions for assault in the first degree, assault in the second degree, felony harassment, and two counts of intimidating a witness. He claims that the aggravating factor in RCW 9.94A.535(3)(h) is unconstitutionally vague as applied to him, that the imposition of a no-contact order prohibiting contact with his son violated his fundamental right to parent, that his convictions for both felony harassment and intimidating a witness violated the prohibition against double jeopardy, and that the court violated his right to a unanimous jury verdict on the felony harassment count when it failed to give a unanimity instruction. On cross appeal, the State claims that none of Purser's crimes constituted the same criminal conduct for sentencing purposes. In a statement of additional grounds, Purser alleges violations of ER 403 and ineffective assistance of counsel. Finding no merit in these arguments, we affirm.

## Background

Purser married J.P. in 2009. At the time they married, J.P. had a son, B.C., who was born in 2005, from a previous relationship. Purser and J.P. had a son, D.P., who was born in 2010.

On September 1, 2011, after months of continuous fighting, J.P. told Purser that she no longer wanted to be married to him. Purser hit her in the face. J.P. told her sons to run from the house, but Purser would not let them leave. Purser then began punching J.P. in the face, choking her, and screaming in her face. She pleaded with Purser to stop because the children were watching the beating and were crying. She also pleaded with him to allow her to go to the dentist to fix the damage that he caused to her mouth. Purser told J.P. to take the children and go into the bathroom because there was a police officer standing outside. He told J.P. to "shut up" D.P., who was crying, or "he was gonna shut him up."

J.P. took the children into the bathroom and breastfed D.P. so that he would stop crying. Purser told J.P. that if the police came into the house or if the police did not leave "that he was gonna kill us." The police did not enter the home.

After the police left, Purser took J.P. and the children to the dentist. He told J.P. a story to tell the dentist about her injury and told her that if she called the police, called her father, or told the dentist what happened, "that he was going to kill the kids and he pulled out a knife and showed [J.P.] and told [J.P.]

that he would kill them and he would leave and go to Kingston and that nothing would stop him."

On September 23, 2011, after B.C. jumped on Purser, Purser grabbed him, threw him on the ground, and punched him. Purser then grabbed J.P., hit her, grabbed her throat, and pulled her away from the children. He climbed on top of J.P. and, while choking her, told her that "this was all [J.P.'s] fault" and that he was going to kill her. Purser punched her in the face and threatened to "break out all [J.P.'s] teeth." He also told J.P. "to say good-bye to [her] children because he was gonna kill [her]." When J.P. refused to do this, Purser told the children "to say good-bye to [J.P.] and that he was gonna kill [J.P.]." J.P. covered the children with her body, but Purser grabbed her and punched and choked her.

After the beating, Purser allowed J.P. to take D.P. to a scheduled doctor's appointment but would not permit her to take B.C. along. When the doctor asked J.P. about her injuries, she gave a false story.

When J.P. returned home from the doctor's appointment, Purser screamed at her, grabbed her by the throat, and held her against the wall. J.P. told Purser that she had to leave. Purser made her promise that she would not call the police and told her, "I'll kill them and I'll kill your family and no one can stop me."

Purser allowed J.P. to leave the home without the children, telling her that if she sought help, "he would kill [J.P.] and he would kill the kids and he would kill [J.P.'s] mom and [J.P.'s] dad or [J.P.'s] sister." After J.P. left, Purser called her

and told her that she "better not call the police or tell anyone what happened or tell [J.P.'s] dad and if [J.P.] did that he would kill [B.C.]." J.P. called 911.

The State charged Purser with one count of assault in the first degree, one count of felony harassment, two counts of intimidating a witness, and one count of assault in the second degree.[1]

At trial, J.P. testified that she never tried to leave Purser "[b]ecause I was scared of him" and "[b]ecause he always would threaten me and tell me that he would kill my family and kill my sister or my mom or my dad or he said that he would kill my children and then kill me." She also testified that she believed Purser's threats and that "he also would tell me that he would take [D.P.] from me and I would never get him back or that he would have [Indian Child Welfare] take him from me and I would never get him back." J.P. further stated that she never sought help "[b]ecause I didn't want to be responsible for somebody getting killed or for him to kill my children or kill me" and that she never escaped with her children "[b]ecause he would most of the time always keep a child from me or he would be with me."

A jury convicted Purser as charged. The jury also returned special verdicts on each count, finding that the crime was an aggravated domestic violence offense. At sentencing, the court concluded that the assault in the first degree count, the felony harassment count, and one count of intimidating a

---

[1] The State also charged Purser with a second count of assault in the second degree, malicious mischief, and attempted escape in the second degree. The court later dismissed these charges.

witness encompassed the same criminal conduct. The court also concluded that the assault in the second degree count and the remaining count of intimidating a witness encompassed the same criminal conduct. The court imposed exceptional sentences and also imposed a lifetime no-contact order prohibiting contact with J.P., B.C., and D.P.

Purser appeals.

## Analysis

RCW 9.94A.535(3)(h) permits a court to impose a sentence outside the standard range for an offense if the jury finds beyond a reasonable doubt that the offense involved domestic violence and one or more of the following was present:

> (i) The offense was part of an ongoing pattern of psychological, physical, or sexual abuse of a victim or multiple victims manifested by multiple incidents over a prolonged period of time;
> (ii) The offense occurred within sight or sound of the victim's or the offender's minor children under the age of eighteen years; or
> (iii) The offender's conduct during the commission of the current offense manifested deliberate cruelty or intimidation of the victim.

Purser claims that the "deliberate cruelty" aggravating factor in RCW 9.94A.535(3)(h)(iii) is unconstitutionally vague as applied to him.[2] Because this vagueness doctrine has no application in the context of sentencing guidelines, his argument fails.

"'The due process vagueness doctrine under the Fourteenth Amendment and article I, section 3 of the state constitution requires that citizens have fair

---

[2] Purser does not allege that the jury did not find the aggravating circumstance beyond a reasonable doubt.

warning of proscribed conduct.'"[3] A valid statute must be clear enough to provide fair warning of the proscribed conduct and also must have ascertainable standards of guilt to prevent arbitrary enforcement.[4]

In State v. Baldwin,[5] our Supreme Court held that the sentencing guideline statutes at issue "are not subject to a vagueness analysis." In Baldwin, the defendant challenged former RCW 9.94A.120(2) (2000),[6] which required the court to impose a standard range sentence unless it found substantial and compelling reasons to impose an exceptional sentence, and former RCW 9.94A.390(2)(d) (2000),[7] which characterized an offense that was a "major economic offense" as an aggravating circumstance that could support an exceptional sentence under former RCW 9.94A.120(2).[8]

Our Supreme Court concluded, "[D]ue process considerations that underlie the void-for-vagueness doctrine have no application in the context of sentencing guidelines."[9] The court explained that the sentencing guideline statutes did not define conduct, permit arbitrary arrest and criminal prosecution, inform the public of penalties attached to criminal conduct, vary the statutory

---

[3] State v. Chanthabouly, 164 Wn. App. 104, 141, 262 P.3d 144 (2011) (quoting State v. Bahl, 164 Wn.2d 739, 752, 193 P.3d 678 (2008)).
[4] Chanthabouly, 164 Wn. App. at 141 (citing State v. Baldwin, 150 Wn.2d 448, 458, 78 P.3d 1005 (2003)).
[5] 150 Wn.2d 448, 461, 78 P.3d 1005 (2003).
[6] Former RCW 9.94A.120, recodified as RCW 9.94A.505 (LAWS OF 2001, ch. 10, § 6).
[7] Former RCW 9.94A.390, recodified as RCW 9.94A.535 (LAWS OF 2001, ch. 10, § 6).
[8] Baldwin, 150 Wn.2d at 458-59.
[9] Baldwin, 150 Wn.2d at 459.

maximum or minimum penalties that the legislature assigned to illegal conduct, or set penalties.[10] Thus, because "nothing in these guideline statutes requires a certain outcome," the guideline statutes did not create a "constitutionally protectable liberty interest."[11]

Purser contends that the United States Supreme Court's decisions in Apprendi v. New Jersey[12] and Blakely v. Washington[13] "clearly establish that aggravating factors affect a liberty interest protected by the Due Process Clause." In these cases, the Court ruled that a judge may not impose a sentencing enhancement without either findings by the jury or a stipulation by the defendant.[14] Apprendi and Blakely focused on the right to a jury trial, which is distinct from the vagueness doctrine that provides public notice and prevents arbitrary state intrusion.[15] Therefore, we remain bound by Baldwin.

Baldwin precludes Purser from challenging the "deliberate cruelty" aggravating factor on vagueness grounds. This aggravating circumstance does not define conduct, authorize arrest, inform the public of criminal penalties, or vary legislatively defined criminal penalties.

Purser also claims that a lifetime no-contact order prohibiting contact with D.P. violates his fundamental right to parent. He asserts, "[A]lthough the State has a compelling interest in protecting children from harm, the State failed to

---

[10] Baldwin, 150 Wn.2d at 459.

[11] Baldwin, 150 Wn.2d at 461.

[12] 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

[13] 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

[14] Blakely, 542 U.S. at 303-04; Apprendi, 530 U.S. at 490.

[15] Baldwin, 150 Wn.2d at 458.

demonstrate how prohibiting all contact between Mr. Purser and his son for life was reasonably necessary to effectuate that interest." We disagree.

RCW 9.94A.505(8) permits a court to impose and enforce crime-related prohibitions as part of any sentence. A "crime related prohibition" is a court order "prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted."[16] A court may impose crime-related prohibitions "for a term of the maximum sentence to a crime, independent of conditions of community custody."[17]

A parent has a fundamental liberty interest in the care, custody, and control of his children.[18] We generally review sentencing conditions for an abuse of discretion.[19] But a court must "'sensitively impose[ ]'" sentencing conditions that limit a fundamental constitutional right and the conditions must be "'reasonably necessary to accomplish the essential needs of the State and public order.'"[20]

A sentencing condition limiting a fundamental right to parent must be "reasonably necessary to prevent harm to a child" and must be narrowly drawn.[21]

---

[16] RCW 9.94A.030(10).

[17] State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940 (2008) (citing State v. Armendariz, 160 Wn.2d 106, 112, 120, 156 P.3d 201 (2007)).

[18] State v. Cortes Aguilar, 176 Wn. App. 264, 277, 308 P.3d 778 (2013) (citing Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)), review denied, 179 Wn.2d 1011 (2014).

[19] Warren, 165 Wn.2d at 32 (citing State v. Riley, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993)).

[20] Cortes Aguilar, 176 Wn. App. at 277 (quoting Warren, 165 Wn.2d at 32).

[21] Cortes Aguilar, 176 Wn. App. at 277 (citing State v. Ancira, 107 Wn. App. 650, 654, 27 P.3d 1246 (2001)); Warren, 165 Wn.2d at 34 (citing Riley, 121 Wn.2d at 37).

Because "what is reasonably necessary to protect the State's interests may change over time," the duration of the no-contact order must also be reasonably necessary.[22] "Prevention of harm to children is a compelling state interest, and the State does have an obligation to intervene and protect a child when a parent's actions or decisions seriously conflict with the physical or mental health of the child."[23]

When offering the State's recommended sentence, the prosecutor stated,

In this particular instance we want, and what is most important to the victim is just knowing that her children will reach adulthood in safety. She had to undergo a pretty horrific, year long ordeal with the defendant in which she was continually abused, beaten, degraded and in part held hostage to a degree because of her fears for the safety of her children. In this case we think that the defendant shows a little bit of insight into his actions. We don't have a lot of optimism that he is going to change. He appears to have very poor impulse control.

When announcing Purser's sentence, the court stated,

In twenty years on the bench the court has not seen a more sever[e] act of domestic violence, short of a killing that [could have] occurred in this case. So, when the court looks at the guidelines, the court has a range that the Legislature has given the court. In this case the range is 162 to 216 months and when deciding what part of the range the court's going to impose, the court looks at the circumstances behind the case to determine whether or not this is kind of a minor violation or major violation. As far as the court's concerned this was a major violation of the assault one because of the harm that was done and the way it was inflicted.

---

[22] In re Pers. Restraint of Rainey, 168 Wn.2d 367, 381, 229 P.3d 686 (2010).

[23] Cortes Aguilar, 176 Wn. App. at 277 (internal quotation marks omitted) (quoting Ancira, 107 Wn. App. at 653-54).

The court informed Purser that "it's a lifetime no contact order unless it's changed by the court."

Purser relies upon State v. Ancira,[24] in which we concluded that the court could not prohibit the defendant from all contact with his children as a condition of his sentence for violating a no-contact order prohibiting him from contacting his wife. We held that the condition was not reasonably necessary to protect the children from the harm of witnessing domestic violence when they were not direct victims of physical violence.[25]

Purser also relies upon In re Personal Restraint of Rainey.[26] In Rainey, the State proved that the defendant had been convicted of a violent crime against his child—first degree kidnapping—and had a record of attempting to leverage the child to inflict emotional distress on the mother.[27] These facts were sufficient to establish that a total contact ban, including indirect or supervised contact, was reasonably necessary to protect the child and the mother.[28] But the court reversed the no-contact order because the sentencing court provided no justification for the order's lifetime duration and the State failed to show that the lifetime prohibition was reasonably necessary.[29] Recognizing the "fact-specific nature of the inquiry," the court remanded to the trial court for resentencing so

---

[24] 107 Wn. App. 650, 654, 27 P.3d 1246 (2001).
[25] Ancira, 107 Wn. App. at 654.
[26] 168 Wn.2d 367, 229 P.3d 686 (2010).
[27] Rainey, 168 Wn.2d at 380.
[28] Rainey, 168 Wn.2d at 379-80.
[29] Rainey, 168 Wn.2d at 381.

that the court could "address the parameters of the no-contact order under the 'reasonably necessary' standard."[30]

Here, although Purser was never convicted of a crime against D.P., prohibiting all contact appears reasonably necessary to protect him. Purser does not dispute that D.P. witnessed Purser's violence against J.P. J.P. testified that Purser threatened to kill D.P. In contrast to Rainey, the court here explained that Purser could seek to have a court modify the order in the future.[31] Because the no-contact order prohibiting contact with D.P. was reasonably necessary, the court did not abuse its discretion.

Purser also claims that imposing convictions for both intimidating a witness and felony harassment violated double jeopardy. We review double jeopardy challenges de novo.[32]

The state and federal constitutions protect against multiple punishments for the same offense. The Fifth Amendment to the United States Constitution provides that no "person [shall] be subject for the same offense to be twice put in

---

[30] Rainey, 168 Wn.2d at 382.

[31] In a footnote, the court in Rainey explained,

> It is possible that the sentencing court believed the order would be subject to a family court's later ruling on visitation. The prosecutor recommended that the no-contact order be subordinated to a family court's subsequent ruling. Still, the face of the judgment and sentence does not contain any conditional language and, when the defendant asked for clarification, the judge did not qualify the lifetime imposition of the order.

Rainey, 168 Wn.2d at 381 n.5 (citations omitted).

[32] RAP 2.5(a)(3); State v. Kier, 164 Wn.2d 798, 803-04, 194 P.3d 212 (2008); State v. Zumwalt, 119 Wn. App. 126, 129, 82 P.3d 672 (2003), aff'd, State v. Freeman, 153 Wn.2d 765, 108 P.3d 753 (2005).

jeopardy of life or limb." Similarly, article I, section 9 of the Washington Constitution ensures that "[n]o person shall be . . . twice put in jeopardy for the same offense." Beyond those constraints, the legislature may prescribe multiple punishments for a single course of conduct under separate criminal statutes.[33] If the legislature authorized multiple punishments for multiple crimes, double jeopardy is not offended.[34] "'Where a defendant's act supports charges under two criminal statutes, a court weighing a double jeopardy challenge must determine whether, in light of legislative intent, the charged crimes constitute the same offense.'"[35]

Our Supreme Court has adopted a four-part test to determine if the legislature intended multiple punishments in a particular situation.[36] First, we consider any express or implicit legislative intent based upon the criminal statutes involved.[37] If this intent is unclear, we use the "same evidence" test to assess whether the two offenses are the same in law and fact.[38] Where the degree of one offense is elevated by conduct constituting a separate offense, a third test, the merger doctrine, may help determine legislative intent.[39] Under the merger doctrine, we presume the legislature intended to punish both offenses

---

[33] State v. Esparza, 135 Wn. App. 54, 59, 143 P.3d 612 (2006) (citing State v. Calle, 125 Wn.2d 769, 776, 888 P.2d 155 (1995)).
[34] Freeman, 153 Wn.2d at 771.
[35] Kier, 164 Wn.2d at 803-04 (internal quotations marks omitted) (quoting Freeman, 153 Wn.2d at 771).
[36] See Freeman, 153 Wn.2d at 771-73.
[37] Freeman, 153 Wn.2d at 771-72.
[38] Freeman, 153 Wn.2d at 772.
[39] Kier, 164 Wn.2d at 805.

through a greater sentence for the greater crime.[40]  Finally, even if two convictions appear to merge on an abstract level under this test, they may be punished separately if an independent purpose or effect for each exists.[41]

To convict Purser of harassment, the State had to prove that he knowingly threatened to kill J.P. immediately or in the future and that his words or conduct placed J.P. in reasonable fear that he would carry out this threat.  To convict Purser of intimidating a witness, the State had to prove that Purser, by using a threat against a current or prospective witness, attempted to induce that person not to report the information relevant to a criminal investigation or the abuse or neglect of a minor child.

The parties agree that the legislative intent is not explicit in the statutory language.  And the merger doctrine does not apply here.[42]

Our analysis begins with the "same evidence" test.  We examine each crime to determine if it includes any element not included in the other and if proof of one offense would necessarily prove the other.[43]

Purser contends that "the precise same acts by Mr. Purser were the basis for felony harassment and intimidating a witness."  He asserts that the State's evidence that he told J.P. on September 23, 2011, if she called police he would

---

[40] Freeman, 153 Wn.2d at 772-73.
[41] Kier, 164 Wn.2d at 804.
[42] See State v. Fuentes, 150 Wn. App. 444, 454 n.30, 208 P.3d 1196 (2009).
[43] Fuentes, 150 Wn. App. at 451 (citing Calle, 125 Wn.2d at 777).

kill her and her family "had both the threat to kill and the threat of harm if [J.P.] called the police, thus constituting the evidence supporting Counts II and III."

Although the same threats made on September 23, 2011, support both convictions, they are not the same offense as charged and tried. We addressed this issue in State v. Fuentes.[44] In Fuentes, we determined that convictions for both intimidating a witness and harassment that were based on the same events did not violate double jeopardy because each required proving one or more elements not required to establish the other crime.[45] We concluded, "Intimidating a witness requires proof of the additional element that the victim be a witness, and felony harassment requires proof of the additional elements of a threat to kill and the victim's reasonable fear the threat would be carried out."[46] Accordingly, we held that "although the charged offenses may be identical in fact because they were both based on a threat to kill a witness, they are not the same under the 'same evidence' test because each crime required proof of additional facts not necessary to prove the other crime."[47] The mere fact that a single threat supports an offense under two statutes is not sufficient to demonstrate a double jeopardy violation.[48]

Purser's challenge also fails the final step of the double jeopardy analysis—if an independent purpose or effect exists for each offense. In

---

[44] 150 Wn. App. 444, 208 P.3d 1196 (2009).
[45] Fuentes, 150 Wn. App. at 452.
[46] Fuentes, 150 Wn. App. at 452.
[47] Fuentes, 150 Wn. App. at 452.
[48] Fuentes, 150 Wn. App. at 453 (quoting In re Pers. Restraint of Orange, 152 Wn.2d 795, 817, 100 P.3d 291 (2004)).

Fuentes, we found a legislative intent to punish these crimes separately.[49] Because the legislature intended to punish felony harassment and intimidating a witness separately, the trial court did not violate his right against double jeopardy by entering convictions on both offenses.

Purser next alleges, "The trial court failed to ensure the jury verdict was unanimous." Purser did not propose a unanimity instruction at trial. But "the right to a unanimous verdict is derived from the fundamental constitutional right to a trial by jury and thus may be raised for the first time on appeal."[50] The adequacy of jury instructions is a question of law that we review de novo.[51]

When the State alleges multiple criminal acts but charges the defendant with only one crime, either the State must choose the act it relies upon as the basis for the charge or the court must instruct the jury that it must agree unanimously that a single act has been proved beyond a reasonable doubt.[52] If neither of these alternatives occurs, a constitutional error arises because of the possibility that some jurors may have relied on one of the criminal acts while other jurors relied on another, resulting in a lack of unanimity on all of the

---

[49] Fuentes, 150 Wn. App. at 454.
[50] State v. Handyside, 42 Wn. App. 412, 415, 711 P.2d 379 (1985) (citing State v. Fitzgerald, 39 Wn. App. 652, 655, 694 P.2d 1117 (1985); State v. Russell, 101 Wn.2d 349, 678 P.2d 332 (1984)).
[51] State v. Boyd, 137 Wn. App. 910, 922, 155 P.3d 188 (2007) (citing State v. Pirtle, 127 Wn.2d 628, 656, 904 P.2d 245 (1995)).
[52] State v. Greathouse, 113 Wn. App. 889, 916, 56 P.3d 569 (2002) (citing State v. Petrich, 101 Wn.2d 566, 572, 683 P.2d 173 (1984)).

elements necessary for a conviction.[53] If this error occurs, we will not uphold a conviction unless the error is harmless beyond a reasonable doubt.[54]

But this unanimity instruction is not required if the evidence shows a continual course of conduct as opposed to several distinct acts.[55] Evidence tends to show several distinct acts if it involves conduct at different times and places or different victims.[56] A continuing course of conduct involves "an ongoing enterprise with a single objective."[57] We use common sense to determine if multiple acts constitute one continuing offense.[58]

Purser claims that each of the threats to kill J.P. he made on September 23, 2011, "was a separate offense, and each act alone was sufficient to independently constitute a count of harassment, thus requiring a unanimity instruction." But a commonsense evaluation of these threats indicates that Purser committed these acts with a single purpose against a single victim in a short period of time.[59] The evidence shows that Purser made at least two threats on September 23, 2011, to kill J.P.—one before she went to the doctor's office

---

[53] Greathouse, 113 Wn. App. at 916 (citing State v. Kitchen, 110 Wn.2d 403, 411, 756 P.2d 105 (1988)).

[54] State v. Coleman, 159 Wn.2d 509, 512, 150 P.3d 1126 (2007) (citing Kitchen, 110 Wn.2d at 411-12).

[55] Boyd, 137 Wn. App. at 923 (citing Petrich, 101 Wn.2d at 571).

[56] State v. Love, 80 Wn. App. 357, 361, 908 P.2d 395 (1996) (citing State v. Handran, 113 Wn.2d 11, 17, 775 P.2d 453 (1989); Petrich, 101 Wn.2d at 571).

[57] Love, 80 Wn. App. at 361 (citing State v. Gooden, 51 Wn. App. 615, 619-20, 754 P.2d 1000 (1998)).

[58] Boyd, 137 Wn. App. at 923 (citing State v. Elliott, 114 Wn.2d 6, 14, 785 P.2d 440 (1990); Petrich, 101 Wn.2d at 571).

[59] See State v. Locke, 175 Wn. App. 779, 803, 307 P.3d 771 (2013), review denied, 179 Wn.2d 1021 (2014).

and one after she returned. These occurred on the same date over the course of a few hours in an attempt to maintain control over J.P. and to cause her to fear him.[60] Because the facts here demonstrate a continuous course of conduct, the court was not required to give a multiple acts unanimity instruction. Purser fails to demonstrate a manifest error allowing him to raise this claim for the first time on appeal.[61]

On cross appeal, the State argues, "None of the charges are the same criminal conduct for sentencing purposes." The State conceded at sentencing that the harassment count was the same criminal conduct as the intimidation charge for the purposes of sentencing. But an erroneous concession does not bind this court.[62]

We review a court's determination of same criminal conduct for abuse of discretion or misapplication of the law.[63] If the record supports a single conclusion about whether the crimes constitute the same criminal conduct, the sentencing court abuses its discretion if it arrives at a contrary result.[64] But if the record supports different conclusions, the issue lies in the court's discretion.[65]

---

[60] J.P. testified that during the first beating on September 23, 2011, Purser told her "he didn't do anything wrong and that everything was my fault and I should just shut up and do what he says." When she returned, he "was yelling at me for trying to leave." J.P. testified at trial that she feared Purser would kill B.C. while she was at the doctor's office.

[61] See RAP 2.5(a).

[62] See State v. Knighten, 109 Wn.2d 896, 902, 748 P.2d 1118 (1988) (erroneous concession on a point of law does not bind the court).

[63] State v. Aldana Graciano, 176 Wn.2d 531, 535, 295 P.3d 219 (2013).

[64] Aldana Graciano, 176 Wn.2d at 537-38.

[65] Aldana Graciano, 176 Wn.2d at 538.

We construe RCW 9.94A.589(1)(a) narrowly to disallow most assertions of same criminal conduct.[66] A defendant bears the burden of establishing that multiple crimes constitute the same criminal conduct.[67]

A determination of same criminal conduct affects the defendant's offender score, which affects the standard range sentence.[68] If the court finds that some or all of the current offenses encompass the same criminal conduct, the court counts those current offenses as one crime.[69]

Crimes constitute the same criminal conduct if they involve the same victim and time and place and require the same criminal intent.[70] Simultaneity is not required; crimes may be part of a "continuous, uninterrupted sequence of conduct over a very short period of time."[71] When the defendant has time to "pause, reflect, and either cease his criminal activity or proceed to commit a further criminal act," he forms "a new intent to commit the second act."[72] In making this factual determination about whether crimes constitute the same criminal conduct, we consider how intimately the crimes are related, if the criminal objective changed substantially between the crimes, and if one crime furthered the other.[73]

---

[66] Aldana Graciano, 176 Wn.2d at 540 (quoting State v. Porter, 133 Wn.2d 177, 181, 942 P.2d 974 (1997)).

[67] Aldana Graciano, 176 Wn.2d at 539.

[68] Aldana Graciano, 176 Wn.2d at 535-36.

[69] Aldana Graciano, 176 Wn.2d at 536 (quoting RCW 9.94A.589(1)(a)).

[70] Aldana Graciano, 176 Wn.2d at 536 (quoting RCW 9.94A.589(1)(a)).

[71] Porter, 133 Wn.2d at 183.

[72] State v. Grantham, 84 Wn. App. 854, 859, 932 P.2d 657 (1997).

[73] State v. Burns, 114 Wn.2d 314, 318, 788 P.2d 531 (1990) (citing State v. Edwards, 45 Wn. App. 378, 382, 725 P.2d 442 (1986)).

At sentencing, defense counsel argued,

> The Intimidation of Witness charges are also part of the same course of conduct with their respective Assault charges. The phrase that the state has used relative, I think they said; well, that those acts that the jury found understood Mr. Purser denies that, were not necessary. I'm not sure what acts they are contending were necessary of the conduct that was charged. It's just an interesting use of phrasing, but they were not separated by significant amounts of time. There was continuous conduct and contact between them. The state has urged and the jury found certain enhancing components that effectively combine these crimes as being part of the overall . . . or circumstances of the relationship between Ms. Purser and Mr. Purser. Given that, we believe the proper analysis would be to find that those are in fact the same course of conduct.

The court determined,

> The assault two and intimidating a witness that occurred on September 1st, I believe are part of the same criminal conduct. I believe they're part and partial [sic] to the same incident, so I would put those together. Then the assault one and the intimidating a witness of 9/23/11, again are a part of that same criminal conduct that surrounded that whole affair on that date. So, but I don't think the assault one and the assault two are the same criminal conduct.

The trial court did not abuse its discretion when it determined that Purser's crimes encompassed the same criminal conduct. The parties do not dispute that the crimes Purser committed on September 1 were not the same criminal conduct as the crimes he committed on September 23.

On September 1, Purser threatened J.P. in their home within a short period of time to prevent her from reporting the assault. The State asserts that two intervening events occurred: "[t]he time she spent breast feeding [D.P.] and the time she spent in the bathroom." But these events occurred after the beating when Purser ordered J.P. into the bathroom to prevent her from contacting the

police who were outside the house. Again, Purser intended to use the beating and the threat to control J.P. and to cause her to fear him.

On September 23, Purser beat J.P. and threatened her and then beat her and threatened her again after she returned from the doctor's office. Again, these crimes occurred within a few hours of each other in an attempt to exert control over J.P. Contrary to the State's contention, the trial court could reasonably conclude that J.P.'s trip to the doctor's office provided insufficient time for Purser to pause, reflect, and form a new intent to commit his later acts.

In a statement of additional grounds, Purser alleges violations of ER 403 and ineffective assistance of counsel. He claims that ER 403 should have precluded Dr. Grace Yelland's testimony about B.C.'s injuries and J.P.'s testimony about "alleged events that took place during the course of our marriage." He also challenges under ER 403 the admission of photographs depicting damage to the front door of his house.

ER 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." We review for abuse of discretion a trial court's determination in balancing the probative value of evidence against its prejudicial impact.[74] "'A trial court abuses

---

[74] Greathouse, 113 Wn. App. at 918 (citing State v. Norlin, 134 Wn.2d 570, 584, 951 P.2d 1131 (1998)).

its discretion when its order is manifestly unreasonable or based on untenable grounds' and it 'necessarily abuses its discretion if it applies the incorrect legal standard.'"[75]

Yelland, a pediatrician, testified about injuries she observed when examining B.C. at a clinic on September 26, 2011. Purser asserts, "There was evidence that he was bruised, but no evidence as to how it happened or who caused them." In challenging J.P.'s testimony, Purser argues, "Not only are these crimes alledged [sic] they were never reported." Purser had the opportunity to challenge the credibility of these witnesses on cross-examination. He also testified on his own behalf. He stated that he did not inflict the injuries that Yelland observed. But he also testified about his marriage to J.P. and had a chance to respond to events about which J.P. testified.

Purser's attorney did not object timely to the admission of the photographs at issue. Even if Purser objected properly, the court concluded that the admission of these photographs would not prejudice him because Purser was not "tied into" the damage to the door. Purser also testified at trial that he had no knowledge about the damage to the door. Purser demonstrates no violations of ER 403.

Purser also claims that his trial attorney provided ineffective assistance because he failed to call certain witnesses. We review ineffective assistance of

---

[75] Kreidler v. Cascade Nat'l Ins. Co., ___ Wn. App. ___, 321 P.3d 281, 290 (2014) (quoting Gillett v. Conner, 132 Wn. App. 818, 822, 133 P.3d 960 (2006)).

counsel claims de novo.[76] To prevail, a defendant must show both deficient performance and resulting prejudice.[77] Failure on either prong of the test defeats an ineffective assistance of counsel claim.[78]

Counsel's performance is deficient if it fell below an objective standard of reasonableness.[79] Our scrutiny of defense counsel's performance is highly deferential, and we employ a strong presumption of reasonableness.[80] The presumption of competence can be overcome by showing counsel failed to subpoena necessary witnesses.[81]

"'The decision whether to call a witness is ordinarily a matter of legitimate trial tactics and will not support a claim of ineffective assistance of counsel.'"[82]

Purser claims that he identified a witness who would have testified that J.P. filed a false police report. Before trial, Purser's attorney told the court that he advised Purser that calling this witness would be "counterproductive." Purser claims that the second witness he identified "would have testified that [J.P.] was a well known drug dealer of pain pills." He argues that he wanted to call this witness because the State had a witness who "was investigating her for indeed selling pain pills." But the trial court granted the State's motion in limine to

---

[76] In re Pers. Restraint of Brett, 142 Wn.2d 868, 873, 16 P.3d 601 (2001).

[77] Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[78] Strickland, 466 U.S. at 697.

[79] State v. Stenson, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997).

[80] Strickland, 466 U.S. at 689; State v. McFarland, 127 Wn.2d 322, 335-36, 899 P.2d 1251 (1995).

[81] In re Pers. Restraint of Davis, 152 Wn.2d 647, 742, 101 P.3d 1 (2004).

[82] State v. Statler, 160 Wn. App. 622, 636, 248 P.3d 165 (2011) (quoting State v. Kolesnik, 146 Wn. App. 790, 812, 192 P.3d 937 (2008)).

exclude any evidence that J.P. "was involved in selling prescription narcotic medication." Because Purser fails to establish that the witnesses he identified were necessary for his case, his ineffective assistance of counsel claim fails.

## Conclusion

Purser may not challenge the "deliberate cruelty" aggravating factor on vagueness grounds. The court's imposition of a no-contact order as a condition of Purser's sentence did not violate his fundamental right to parent, and its imposition of convictions for both felony harassment and intimidating a witness did not violate double jeopardy. Purser fails to show a manifest error allowing him to challenge the trial court's failure to give a unanimity instruction. The State fails to show that the trial court abused its discretion when it found that Purser's crimes constituted the same criminal conduct. No evidence in the record supports the claims that Purser asserts in his statement of additional grounds. For these reasons, we affirm Purser's conviction.

_Leach, J._

WE CONCUR:

_Trickey, J_        _Cox, J._